**O**

**JS-6**

# United States District Court
# Central District of California

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER;<br>ORANGE COUNTY COASTKEEPER,<br>    Plaintiffs,<br>  v.<br><br>MARUHACHI CERAMICS OF<br>AMERICA, INC.; DELILAH<br>PROPERTIES, INC.;<br>    Defendants. | Case No. 5:14-cv-01525-ODW (AGRx)<br><br>**CONSENT DECREE** |

## CONSENT DECREE

  The following Consent Decree is entered into by and between Plaintiffs Orange County Coastkeeper and Inland Empire Waterkeeper ("Plaintiffs" or "Waterkeeper"), and Defendants Maruhachi Ceramics of America, Inc., and Delilah Properties, Inc. ("Defendants" or "MCA"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

  **WHEREAS**, Inland Empire Waterkeeper is a program of Orange County Coastkeeper. Orange County Coastkeeper is a non-profit public benefit corporation organized under the laws of the State of California.

  **WHEREAS**, Plaintiffs are dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Santa Ana River and Inland Empire area receiving waters;

**WHEREAS**, together, Orange County Coastkeeper and Inland Empire Waterkeeper have over 2,000 members who live and/or recreate in and around the Santa Ana River watershed;

**WHEREAS**, MCA operates a facility for structural clay manufacturing, which includes exposed raw clay material loading/unloading and storage, exposed ceramic product storage, exposed fueling areas, and related materials handling;

**WHEREAS**, Maruhachi Ceramics of America, Inc. and Delilah Properties, Inc. are owners and/or operators of a structural clay manufacturing facility located at 1985 Sampson Avenue, Corona, California 92879, hereinafter referred to by the Settling Parties as the "MCA Facility";

**WHEREAS**, on May 14, 2014, Plaintiffs sent Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Santa Ana Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the CWA, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"), 33 U.S.C. § 1311(a), and violations of California's Permit for Discharges of Stormwater Associated with Industrial Activities (National Pollution Discharge Elimination System General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ) (hereinafter "Storm Water Permit") at the MCA Facility;

**WHEREAS**, on July 24, 2014, Plaintiffs filed a complaint against Defendants in the United States District Court, Central District of California (Case No. EDCV14-01525-ODW (AGRx)) alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the MCA Facility (hereinafter "Complaint");

**WHEREAS,** discharges from the MCA Facilities are regulated by the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Plaintiffs allege Defendants to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the MCA Facility;

**WHEREAS**, Defendants deny all allegations in the Notice Letter and Complaint relating to the MCA Facility;

**WHEREAS**, Defendants have submitted documentation to Plaintiffs that the onsite infiltration basin draining to Drain 4 receives discharges from the MCA Facility is sized appropriately to receive storm water discharges from the MCA Facility up to the 85% Design Storm;[1]

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED BY AND BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.      Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the MCA Facility is located within this District;

3.      The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

---

[1] For purposes of this Settlement Agreement, "85% Design Storm" means the storm event whose total precipitation is less than or equal to eighty-five (85) percent of all 24-hour storms in an area on an annual basis.

4.      Plaintiffs have standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.      AGENCY REVIEW AND TERM OF CONSENT DECREE

6.      On December 31, 2014, the United States Department of Justice, Environment and Natural Resources Division, Law and Policy Section notified the Court that it reviewed the Consent Decree and does not object to its entry.  *See* 33 U.S.C. § 1365(c)(3).  (ECF No. 14.)

7.      Termination Date. This Consent Decree shall terminate two (2) years from the Effective Date, unless there is an ongoing, unresolved dispute regarding Defendants' compliance with this Consent Decree. In the event there is a pending motion to enforce the Consent Decree, the Consent Decree will terminate upon the earlier of (1) the Court's ruling on such motion if it resolves the dispute, or (2) thirty (30) days following the Parties' notice to the Court of agreement by the Parties that the dispute that is the subject of the pending motion has been fully resolved.

## II.      COMMITMENTS OF THE SETTLING PARTIES

### A.      Storm Water Pollution Reduction Measures

#### a.   **Definitions**

8.      For purposes of this Consent Decree, "Driveway" means the paved private access route from Sampson Avenue leading to the northeast corner of the Facility near SR-91.

9.      For purposes of this Consent Decree, "Warehouse" means that main clay tile manufacturing building at the MCA site, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

10.      For purposes of this Consent Decree, "Loading Dock" means the area on the northern border of the Facility abutting the Warehouse, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

11.     For purposes of this Consent Decree, "Design Storm" means the 85th percentile 24 hour storm event for the Corona area, which measures 0.71 inches, as seen in the Infiltration Study attached to ECF No. 15-1 as Exhibit B.

12.     For purposes of this Consent Decree, "Raw Material Storage Area" means the outdoor raw clay storage area abutting the Driveway near Drains 1 and 2, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

13.     For purposes of this Consent Decree, "Cottage" means the building adjacent to the Warehouse and the parking lot, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

14.     For purposes of this Consent Decree, "Drain 1" means the northernmost drain on the Driveway, near the Raw Material Storage Area, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

15.     For purposes of this Consent Decree, "Drain 2" means the drain located on the Driveway to the north of the berm, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

16.     For purposes of this Consent Decree, "Drain 3" means the southernmost drain on the Driveway, near the parking lot and to the south of the berm, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

17.     For purposes of this Consent Decree, "Drain 4" means the drain located in the south portion of the Facility, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

18.     For purposes of this Consent Decree, "Grassy Swale" means the area in the southwest portion of the Facility where storm water is directed for infiltration and possible discharge through Drain 4, as seen in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

      b.   **Defendants' Obligations**

19.     Defendant shall retain a qualified consultant to effectively train MCA employees responsible for collective storm water samples on the correct methods to

collect and handle storm water samples.

20.     Defendants shall construct a berm along the northwest border of the property, extending halfway along the property line, with sufficient freeboard to capture run-on from SR-91 and infiltrate storm water onsite within thirty (30) days of the Effective Date of this Consent Decree], pursuant to the design details provided in the Proposed BMP Locations Map attached ECF No. 15-1 as Exhibit A.  If discharge volumes exceed the de minimis quantities alleged by Caltrans, crushed rock will be installed in the basin to improve infiltration within thirty (30) days of a discharge from the bermed area to the MCA site.

21.     Defendants shall convert Drains 1 and 2 into blind sumps designed to collect all storm water from the Driveway during a Design Storm by within thirty (30) days of the Effective Date of this Consent Decree in accordance with the details provided in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

22.     Defendants shall redirect Warehouse roof downspouts away from the Raw Material Storage Area to a permanent bioswale located adjacent to the Cottage and the parking lot within thirty (30) days of the Effective Date of this Consent Decree, in accordance with details provided in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A.

23.     Defendants shall construct three curb cuts of approximately one (1) foot in width along the curb surrounding the Grassy Swale to direct storm water from the parking lots to the infiltration basin within thirty (30) days of the Effective Date of this Consent Decree, in accordance with the details provided in the Proposed BMP Locations Map attached ECF No. 15-1 as Exhibit A.

24.     Defendants shall construct two (2) crushed rock check dams approximately one and a half (1.5) feet high in the last one hundred (100) feet of the cement lined drainage channel before the grassy swale along the west side of the property, pursuant to the design specifications in Exhibit B attached to ECF No. 15-1. Construction shall be complete within thirty (30) days of the Effective Date of this Consent Decree

25.     Defendant shall repair and/or replace all unvegetated areas in the infiltration basin around Drain 4 with appropriate vegetation for this BMP within thirty (30) days of the Effective Date of this Consent Decree.

26.     Defendant shall install crushed rock at the interface between the cement lined drainage channel and the Grassy Swale within thirty (30) days of the Effective Date of this Consent Decree in order to spread flow over a larger area, in accordance with the details provided in the Proposed BMP Locations Map attached to ECF No. 15-1 as Exhibit A and the Infiltration Study attached to ECF No. 15-1 as Exhibit B.

27.     Defendants shall cover material in the Raw Material Storage Area with properly secured plastic sheeting prior to any rain event during business hours, as well as any rain event during non-business hours preceded by a National Oceanic and Atmospheric Administration prediction of a seventy (70) percent chance of rain or higher. All plastic sheeting must be sufficiently secured against wind gusts. Defendants shall implement coverage of the Raw Material Storage Area within thirty (30) days of the Effective Date of this Consent Decree

28.     Defendants shall install float switch activated sump pumps in Drain 1 and Drain 2 to direct storm water from the blind sumps to a 20 micron bag filter housed in a Pentek Eyebolt Bag Filter Housing (Grainger catalog item #4BB31) or equivalent, in the northeast corner of the property within thirty (30) days of the Effective Date of this Consent Decree Storm water will be discharged from the bag filter to the northwest corner of the property where it will enter a drainage channel leading to Drain 4.

29.     Defendants shall install a Pentek Eyebolt Bag Filter Housing (Grainger catalog item #4BB31) or equivalent, equipped with a 20 micron bag filter, at the Loading Dock sump pump discharge point within thirty (30) days of the Effective Date of this Consent Decree Storm water will be discharged from the bag filter to the drainage channel leading to Drain 4.

30.     Defendants shall convert the "Grassy Swale" to an infiltration basin by sealing the opening for Drain 4 and installing a vertical standpipe to function as an

overflow inlet within thirty (30) days of the Effective Date of this Consent Decree. The standpipe will be 58-62 inches in height and 6-8 inches in diameter. A sampling port will be installed in the standpipe to collect storm water in the event of a storm exceeding the Design Storm.

31.     Defendants shall evaluate additional BMPs for Drain 3 if sampling results do not meet the benchmarks detailed in Table 1 after the second sample of the 2014-2015 wet season or July 1, 2015, whichever is earlier.

32.     Defendants shall regulate the flow of storm water discharges from the sump pumps to the infiltration basin to allow for controlled infiltration. If infiltration is occurring too slowly, then Defendant shall reduce the rate of storm water reaching the infiltration basin until such time that there is sufficient capacity to infiltrate.

33.     Defendants shall diligently file and pursue all required local agency applications for permits for the best management practices ("BMPs") at the MCA Facility, shall diligently pursue the procurement of contractors, labor, and materials to complete all such BMPs by the required deadlines, and shall use their best efforts to meet these deadlines.

**B.      Reduction of Pollutants in Discharges**

34.     <u>Storm Water Pollution Reduction</u>. Beginning in the 2014-2015 wet season, identified in the Storm Water Permit as October 1 – May 30 (hereinafter the "Wet Season"), Drain 3 pollutants discharged subject to the Storm Water Permit shall not exceed the concentrations listed in Table 1, as provided in this Consent Decree.

**Table 1 – Concentrations for Storm Water Discharges**

| Pollutant | Concentration |
|---|---|
| Total Suspended Solid | 100 mg/L |
| pH | 6.5-8.5 units |
| Oil & Grease | 15 mg/L |
| Specific Conductance | 200 umhos/cm |
| Total Recoverable Aluminum | 0.75 mg/L |

| Total Recoverable Iron | 1.0 mg/L |
|---|---|
| Chemical Oxygen Demand | 120 mg/L |
| Biological Oxygen Demand (5 Day) | 30 mg/L |
| Dissolved Lead | **0.065 mg/L**[2] |
| Dissolved Copper | **0.013 mg/L** |
| Dissolved Zinc | **0.120 mg/L** |

35.    Action Plan for Table 1 Exceedances. If any storm water sample collected at Drain 3, pursuant to the Storm Water Permit or this Consent Decree, contains a level of pollutant(s) above Table 1 concentration, MCA shall submit a plan for reducing the discharge of such pollutant(s) to achieve the Table 1 concentrations ("Action Plan"). In any year that the Action Plan is required, it shall be submitted to Waterkeeper by July 1 following the Wet Season during which the exceedance(s) occurred.

36.    Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of Table 1 concentration(s), (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs, including the possibility of additional treatment, to reduce pollutants in storm water below Table 1 concentrations, and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation of the BMPs shall be developed with good faith efforts to have all BMPs implemented prior to the next Wet Season, and shall include an explanation of any inability to implement the additional BMPs prior to the beginning of the next Wet Season.

37.    Action Plan Review. Waterkeeper shall have thirty (30) days upon receipt of MCA's Action Plan to provide MCA with comments. Within thirty (30) days of MCA's

[2] Several of the Table 1 concentrations are hardness dependent. The hardness dependent concentrations are in bold. The California Toxics Rule concentrations expressed assume hardness of 100 mg/L $CaCO_3$. Defendant shall adjust the concentrations using the methods provided in the California Toxics Rule as applicable.

receipt of Waterkeeper's comments on the Action Plan, MCA shall accept and incorporate Waterkeeper's comments of recommended BMPs into the Action Plan, or shall provide Waterkeeper with a written explanation if MCA refuses to develop and/or implement any of Waterkeeper's recommended BMPs. It is the Parties' intent that disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing other BMPs set forth in the Action Plan. Disputes relating to the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out below.

38.     Within ninety (90) days following the completion of an Action Plan review, MCA shall revise its SWPPP and Monitoring and Reporting Program ("M&RP"), as applicable, to reflect the changes required by the Action Plan. "Completion of Action Plan review," as used herein, shall mean (1) the date on which any disputes relating to the Action Plan are resolved or, if there are no disputes, (2) thirty (30) days following MCA's receipt of Waterkeeper's comments on the Action Plan or, if there are no comments, (3) thirty (30) days following Waterkeeper's receipt of MCA's Action Plan. MCA shall notify Waterkeeper when the Action Plan has been completely implemented, and shall submit the revised SWPPP and/or M&RP to Waterkeeper for review and comment as set out in paragraphs 55 and 58 below.

**C.     Sampling at the MCA Facility**

39.     Defendants shall install a recording rain gauge capable of recording rainfall to 0.10 inches at the MCA Facility within thirty (30) days of the Execution Date. Defendants shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance, maintain records of rain data, and provide such records upon request by Waterkeeper.

a. **Sampling During Term of Consent Decree**

40.     During the life of this Consent Decree, Defendants shall collect samples of

any storm water discharging from the MCA Facility during operating hours.[3] Any failure to sample a discharge from each discharge location at the MCA Facility shall be documented and submitted to Coastkeeper within five (5) days of the date a sample could have been collected but was not.

41.     During the life of this Consent Decree, Defendants shall collect two samples per year of storm water discharged from the SR-91 infiltration basin to the MCA Facility during operating hours to assess the properties of run-on to the Facility.

42.     All samples collected pursuant to paragraphs 40–41 shall be analyzed for the following parameters: total suspended solids, copper, lead, zinc, oil and grease, aluminum, iron, biochemical oxygen demand, chemical oxygen demand, specific conductance, and pH.

43.     Defendants shall sample discharges from the post-filtration sump pump for turbidity using a turbidity meter. If the sample results in a reading greater than 25 NTU, then the bag filter size will be reduced, in stages, from 20 microns to as few as 1 micron.

44.     <u>Storm Water Sampling Frequency</u>. For the life of this Consent Decree, MCA shall collect storm water discharge samples from the first storm event of the Wet Season and from three (3) other storm events for a sampling total of four (4) storm events that produce a discharge during the 2014–15 and 2015–16 Wet Seasons (provided there are four (4) or more storm events that produce a discharge during those seasons). Samples shall be collected according to the method described in paragraph 40 and the revised SWPPP and M&RP.

45.     <u>Sampling Reduction.</u> MCA may discontinue analyzing storm water samples collected pursuant to this Consent Decree at any discharge point(s) for a parameter listed in paragraph 42, so long as the sample is below the corresponding for four (4)

---

[3] The operating hours for the MCA Facility are Monday – Friday, 3:30am – 12:30 pm during the summer season and 5:30am – 2:00pm during the winter season.  The summer season begins at 12:00am on June 1, and continues until 12:00am on October 1, each year. All other time periods comprise the winter season.

consecutive sampling events, and MCA has collected and analyzed the sample in accordance with the terms of this Consent Decree and the Storm Water Permit.

   b. **<u>Sampling Analysis and Reporting</u>**

   46.   Defendants shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree, except for the turbidity analysis detailed above. When requesting analysis of storm water samples, the laboratory will be instructed to utilize the analytical limits such that, at a minimum, the method detection limits are below the EPA Benchmarks and applicable water quality standards set forth in Table 1 above.

   47.   Defendants shall request that all sample analyses be reported to them within thirty (30) days of laboratory receipt of the sample.

   48.   Defendants shall request that results of all sample analyses for lead, copper, and zinc be reported as both total and dissolved concentration levels. Defendants shall request that results of aluminum and iron be reported as total recoverable concentration levels.

   49.   Defendants shall provide the complete laboratory results of all samples collected at the MCA Facility to Plaintiffs within fifteen (15) days of receiving the results.

   50.   Where Defendants observe and/or sample a discharge at the MCA Facility, Defendants shall provide rain gauge data to Plaintiffs within twenty-one (21) days of the rain event producing the discharge.

**D.   Prohibition Against Discharges**

   51.   <u>Prohibition Against Discharges</u>. Storm water shall not discharge from the MCA Facility during any storm at or below the Design Storm, except for discharges to Drain 3.  In the event that a discharge occurs during any storm at or below the Design Storm (except for discharges to Drain 3), the parties agree to promptly meet and confer to address the prevention of a further discharge.

**E.   Monitoring and Reporting Program Revisions**

   52.   <u>Revising the M&RP</u>. Within thirty (30) days of the Effective Date of this

Consent Decree, Defendants shall revise their M&RP for the MCA Facility to update any information required by the revised SWPPP, Storm Water Permit and/or this Consent Decree.

53.   <u>Visual Observations</u>.   During the life of this Consent Decree, Defendants shall conduct visual observations during every significant rain event[4] that occurs during normal scheduled operating hours of all infiltration areas and all discharges, if any, at the MCA Facility.

54.   Defendants shall record any pollutants, odors, discolorations, or other pollutant indicators observed during these visual observations and compare the results of these observations to any sampling analyses conducted at the same locations.

55.   <u>Plaintiff's Review of Revised M&RP</u>. Defendants shall submit the revised M&RP for the MCA Facility to Plaintiffs for review and comment. Plaintiffs shall provide comments, if any, to Defendants relating to compliance with the terms of this Consent Decree and the Storm Water Permit within thirty (30) days of receipt of the M&RP. Defendants shall incorporate Plaintiffs' comments into the M&RP, or shall justify in writing why any comment was not incorporated within thirty (30) days of receiving comments.

**F.   Storm Water Pollution Prevention Plan Revisions**

56.   Within thirty (30) days of the Effective Date of this Consent Decree, Defendants shall revise the SWPPP for the MCA Facility to include all BMPs required by the Consent Decree, as well as operating procedures for the storm water BMPs, including a specific section providing guidance on regulating sump pump discharges to improve infiltration basin performance, plus all requirements of Section A of the Storm Water Permit.

57.   <u>Additional SWPPP Revisions</u>. Defendants shall revise the SWPPP for the

---

[4] A significant rain event is defined by EPA as a rainfall event generating .1 inches or more of rainfall, which generally results in measurable discharges of a typical industrial facility.

MCA Facility if there are any changes in the MCA Facility's operations, including, but not limited to, changes to storm water discharge point(s). These SWPPP revisions shall occur within sixty (60) days of the changes in operations.

58.   <u>Plaintiff's Review of Revised SWPPPs</u>.   Defendants shall submit any revised SWPPP for the MCA Facility to Plaintiffs for review and comment within ten (10) days of the SWPPP revision. Plaintiffs shall provide comments, if any, to Defendants relating to compliance with the terms of this Consent Decree and the Storm Water Permit within thirty (30) days of receipt of any revised SWPPP. Defendants shall incorporate Plaintiffs' comments into any revised SWPPP, or shall justify in writing why any comment was not incorporated within thirty (30) days of receiving comments.

**G.   Employee Training**

59.   Within forty-five (45) days of the Effective Date of this Consent Decree, Defendants shall develop and implement a training program, including any training materials needed for effective implementation of the training program, for the MCA Facility ("Training Program"). The Training Program shall ensure: (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree at the MCA Facility, and (2) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree. At a minimum the Training Program shall require at least the following:

a.   <u>Language</u>. Defendants shall conduct the Training Program in the language or languages in which all employees participating are fluent;

b.   <u>Non-Storm Water Discharges</u>. Defendants shall train all employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges;

c.   <u>BMPs</u>. Defendants shall train all employees on BMP implementation and

1 maintenance to ensure that BMPs are implemented effectively to prevent the exposure of

2 pollutants to storm water, to prevent the discharge of contaminated storm water, and to

3 ensure the proper treatment of storm water at the MCA Facility;

4       d. <u>Storm Water Sampling</u>. Defendants shall designate an adequate number of

5 employees necessary to collect storm water samples as required by this Consent Decree.

6 The Training Program shall include the proper sampling protocols, including chain of

7 custody requirements, to ensure storm water samples are properly collected, stored, and

8 submitted to a certified laboratory.

9     60.    The Training Program shall be provided by a private consultant or a

10 representative of Defendants who is familiar with the requirements of this Consent

11 Decree and the Storm Water Permit. The training shall be repeated annually, or as

12 necessary to ensure that all employees are familiar with the requirements of this Consent

13 Decree, the Storm Water Permit, and the MCA Facility's SWPPP. All new staff will

14 receive this training before assuming responsibilities for implementing the SWPPP.

15     61.    Defendants shall maintain records of the subject matter and attendance to

16 document compliance with this section, and shall provide Plaintiffs with a copy of these

17 records within fourteen (14) days of receipt of a written request.

18 **H.    Site Inspections, Compliance Monitoring and Reporting**

19     62.    <u>Site Inspections</u>. Every year during the life of this Consent Decree, Plaintiffs

20 and their representatives may conduct one (1) Wet Season (October 1 – May 30) site

21 inspection and one (1) Dry Season (June 1 – September 30) site inspection at the MCA

22 Facility. The site inspections shall occur during normal business hours.  Defendants

23 and/or their representatives shall have the right to accompany any site inspection.

24 Plaintiffs shall provide Defendants with twenty-four (24) hours' notice (weekends and

25 holidays excluded) prior to each Wet Season site inspection, and forty-eight (48) hours'

26 notice (weekends and holidays excluded) prior to each Dry Season site inspection. Notice

27 shall be provided by telephone or electronic mail.

28     63.    <u>Scope of Inspections.</u> During the site inspections, Plaintiffs and/or their

representatives up to a limit of three individuals shall be allowed access to the MCA Facility's SWPPP, M&RP, plus all other monitoring records, reports, and sampling data related to compliance with the Storm Water Permit and/or this Consent Decree.

64.     During the site inspections, Plaintiffs and/or their representatives may collect storm water samples from the MCA Facility. At Plaintiffs' expense, a certified California laboratory shall analyze samples collected by Plaintiffs and copies of the laboratory reports shall be provided to Defendants within five (5) business days of receipt. At the request of Defendants, the samples shall be split and one half provided to Defendants so as to allow Defendants to have their own certified California laboratory analyze the samples, in accordance with the sample analyses requirements in paragraphs 46-49.

65.     During the site inspections, Plaintiffs may take photographs or video recording of the MCA Facility. If Plaintiffs take any photographs and/or video recording, Plaintiffs shall provide Defendants with the photographs and/or video within fourteen (14) days after any written request by Defendants for such photographs and/or videos.

66.     Reporting and Document Provision. During the life of this Consent Decree, Defendants shall copy Plaintiffs on all documents related to water quality at the MCA Facility that are submitted to the EPA, the Regional Board, the State Board, and/or any state or local agency, county, or municipality. Such reports and documents shall be provided to Plaintiffs on the date they are sent to the agencies, counties, and/or municipalities. Any correspondence related to Defendants' compliance with the Storm Water Permit or water quality received by Defendants from any regulatory agency, and/or any state or local agency, county, or municipality shall be provided to Plaintiffs within ten (10) days of receipt by Defendants.

67.     Compliance Monitoring and Oversight. Defendants agree to contribute to Waterkeeper's review of information and monitoring of compliance with this Consent Decree in the amount of Five Thousand Dollars ($5,000) per year, for the term of this Consent Decree, for a total of Ten Thousand Dollars ($10,000). The payment shall be

made within thirty (30) days of the Effective Date, made payable to: "Orange County Coastkeeper," and delivered by certified mail, overnight delivery, or wire to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

**I. Environmental Mitigation Project, Reimbursement of Litigation Fees and Costs, and Stipulated Payments**

68.  <u>Environmental Project</u>. Defendants agree to make a payment of Seventeen Thousand Five Hundred Dollars ($17,500) to the Rose Foundation for Communities and the Environment to fund environmental project activities that will benefit the Southern California Bight and its tributaries. Payment shall be made within thirty (30) days of the Effective Date, payable to the "Rose Foundation for Communities and the Environment" and delivered by certified mail, overnight delivery, or wire transfer to the Rose Foundation for Communities and the Environment, Attention: Tim Little, 1970 Broadway, Suite 600, Oakland, California 94612-2218 . A confirmation copy of the payment shall be sent to Waterkeeper.

69.  <u>Reimbursement of Plaintiffs' Fees and Costs</u>. Defendants shall pay a total of Forty Five Thousand Dollars ($45,000) to Plaintiffs to partially reimburse Plaintiffs for their investigation fees, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made within ten (10) days of the Effective Date payable to "Orange County Coastkeeper" and delivered via wire transfer to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

70.  <u>Stipulated Payment</u>. For each missed deadline included in this Consent Decree, Defendants shall make a remediation payment of One Thousand Dollars ($1,000) to the Rose Foundation for Communities and the Environment to fund environmental project activities that will benefit the Southern California Bight and its tributaries. Payment shall be made within thirty (30) days of the missed deadline, payable to the "Rose Foundation for Communities and the Environment" and shall be delivered by certified mail, overnight delivery, or wire transfer to: Rose Foundation for Communities

1  and the Environment, Attention: Tim Little, 1970 Broadway, Suite 600, Oakland,
2  California 94612-2218. Defendants shall provide Coastkeeper with a copy of each such
3  payment and all related correspondences at the time the payment is made.

4  ## III.   DISPUTE RESOLUTION

5  71.   This Court shall retain jurisdiction over this matter until the final termination
6  date defined in paragraph 7 above for the purposes of implementing and enforcing the
7  terms and conditions of this Consent Decree, and adjudicating all disputes among the
8  Settling Parties that may arise under the provisions of this Consent Decree. The Court
9  shall have the power to enforce this Consent Decree with all available legal and equitable
10  remedies, including contempt.

11  72.   Meet and Confer. A party to this Consent Decree shall invoke the dispute
12  resolution procedures of this section by notifying all other Settling Parties in writing of
13  the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith
14  (either telephonically or in person) in an attempt to resolve the dispute informally over a
15  period of ten (10) days from the date of the notice. The Settling Parties may elect to
16  extend this time in an effort to resolve the dispute without court intervention.

17  73.   If the Settling Parties cannot resolve a dispute by the end of meet and confer
18  informal negotiations, the party initiating the dispute resolution provision may invoke
19  formal dispute resolution by filing a motion before the United States District Court for
20  the Central District of California. The Settling Parties agree to request an expedited
21  hearing schedule on the motion.

22  74.   Enforcement Fees and Costs. Litigation costs and fees incurred in
23  conducting a meet and confer session(s) or otherwise addressing and/or resolving any
24  dispute, including an alleged breach of this Consent Decree, shall be awarded in
25  accordance with the standard established by Section 505 of the Clean Water Act, 33
26  U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

27  ## IV.   MUTUAL RELEASE OF LIABILITY

28  75.   Plaintiffs' Release. Upon the Effective Date of this Consent Decree,

Plaintiffs, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives release all persons including, without limitation, Defendants (each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, and shareholders, and each of their contractors, partners, joint venturers, landlords, predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the Termination Date of this Consent Decree.

76.     <u>Defendants' Release</u>. Upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives release all persons including, without limitation, Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiffs' Notice Letter and Complaint up to entry of this Consent Decree by the Court.

77.     Nothing in this Consent Decree limits or otherwise affects Plaintiffs' right to address or take any position that they deem necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendants' compliance with the Storm Water Permit or the Clean Water Act occurring or arising after entry of this Consent Decree by the Court but specifically excluding the discharges and all other matters addressed by this Consent Decree.

/ / /

## V.    **MISCELLANEOUS PROVISIONS**

78.    <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

79.    <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control, including Force Majeure, which includes any act of God, war, fire, earthquake, windstorm, flood, or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. Delay in compliance with a specific obligation under this Consent Decree due to impossibility and/or Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a. If Defendants claim compliance was or is impossible, they shall notify Plaintiffs in writing within thirty (30) days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendants should have known of the event or circumstance by the exercise of reasonable diligence. If the deadline for compliance that Defendants will miss is within the thirty (30) day window that Defendants have to notify Plaintiffs of their

noncompliance, Defendants shall notify Plaintiffs within three (3) days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendants should have known of the event or circumstance by the exercise of reasonable diligence, such that Defendants shall not notify Plaintiffs of the impossibility and/or Force Majeure after the Consent Decree deadline has already passed.

b. The notice described in paragraph 77.a shall describe the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

c. The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to an event or issue in paragraph 67.a, despite the timely good faith efforts of Defendants, new deadlines shall be established.

d. If Plaintiffs disagree with Defendants' notice of impossibility and/or Force Majeure, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Section III. In such proceeding, Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances

80.  <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

81.  The Settling Parties have participated jointly in the negotiation and drafting

21

of this Consent Decree. In the event that an ambiguity or question of intent or interpretation arises, this Consent Decree shall be construed as if drafted jointly by the Settling Parties and no presumption or burden of proof shall arise favoring or disfavoring any Settling Party by virtue of the authorship of any of the provisions of this Consent Decree.

82.    <u>Choice of Law</u>. The laws of the State of California shall govern this Consent Decree, except to the extent inconsistent with any laws of the United States, in which case the laws of the United States shall govern.

83.    <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

84.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff</u>:

Orange County Coastkeeper
Garry Brown, Executive Director
    garry@coastkeeper.org
Colin Kelly, Staff Attorney
    colin@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

<u>If to Defendants</u>:

Gresham Savage Nolan & Tilden
550 E. Hospitality Lane, Suite 300
San Bernardino, CA 92408

With copies to:

Maruhachi Ceramics of America, Inc.
Attn: Yoshihiro Suzuki
1985 Sampson Avenue
Corona, California 92879

Delilah Properties, Inc.
Attn: Yoshihiro Suzuki
1985 Sampson Avenue
Corona, California 92879

Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending the notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

85.   <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiffs do not, by their consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

86.   <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one (1) original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

87.   <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

88.   <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

89.   <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement

between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

90.     Authority. The representatives for Plaintiffs and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

91.     Successor and Assigns. The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

92.     Binding Effect. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Defendants do not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter or the Complaint.

**IT IS SO ORDERED.**

January 7, 2015

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**